69 F.3d 531
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Francis DiRICO, Defendant-Appellant.
 No. 94-1471.
 United States Court of Appeals, First Circuit.
 Nov. 3, 1995.
 
 1
 John A. MacFadyen, with whom Harold C. Arcaro, Jr., was on brief for appellant.
 
 
 2
 Rita G. Calvin, Attorney, Tax Division, U.S. Department of Justice, with whom Loretta Argrett, Assistant Attorney General, Donald K. Stern, U.S. Attorney, Robert E. Lindsay and Alan Hechtkopf, Attorneys, Tax Division, U.S. Department of Justice, were on brief for appellee.
 
 
 3
 Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and McAULIFFE,* District Judge.
 
 
 4
 McAULIFFE, District Judge.
 
 
 5
 Appellant Francis DiRico ("DiRico") challenges a number of rulings made by the district court during his criminal trial on charges of false subscription to a tax return, as well as the sentence imposed. We limit our discussion to the one issue raised by DiRico that has merit.
 
 
 6
 While this court was considering the multiple issues raised on appeal, the United States Supreme Court issued its opinion in United States v. Gaudin, 115 S.Ct. 2310 (1995). That decision clarified a point of law relevant to this case. Accordingly, the government suggested that the parties file supplemental briefs addressing DiRico's claim that when the trial judge determined "materiality" under 26 U.S.C. Sec. 7206(1) as a matter of law, he impermissibly directed the jury's guilty verdict, at least with regard to that essential element of the crime of conviction.
 
 
 7
 The parties were directed to file supplemental briefs on that issue by September 15, 1995. Having now considered those briefs and the Supreme Court's opinion in United States v. Gaudin, 115 S.Ct. 2310 (1995), we find that the challenged instruction on materiality, although appropriate when given, see, e.g., United States v. Romanow, 509 F.2d 26, 28 (1st Cir.1975), nevertheless constitutes reversible error under Gaudin, which decision is applicable to this case. Accordingly, we reverse and remand.
 
 BACKGROUND
 
 8
 I. PROCEDURAL HISTORY.
 
 
 9
 On March 30, 1993, a federal grand jury returned a three-count indictment against DiRico. Counts One and Two charged him with willfully attempting to evade his personal income tax liability for tax years 1986 and 1987, in violation of 26 U.S.C. Sec. 7201. Count Three charged him with willfully making and subscribing a false corporate tax return for Industrial Electric and Electronics, Inc., for the fiscal year ending June 30, 1987, in violation of 26 U.S.C. Sec. 7206(1). After a thirteen-day trial, the jury acquitted DiRico on Counts One and Two, but convicted him on Count Three.
 
 
 10
 II. PERTINENT FACTS.
 
 
 11
 During the relevant tax years, DiRico was president and sole shareholder of Industrial Electric and Electronics, Inc. ("IE & E"), a cellular communications company. IE & E's employees performed routine bookkeeping and accounting functions for the company, and Warren Lynch served as the company's in-house accountant. IE & E also retained an outside accounting firm to review its books and prepare corporate tax returns.
 
 
 12
 IE & E managed its financial affairs with the assistance of a computer-based accounting system. Each IE & E customer was assigned an account number, and each customer's payment was logged into the computer system as a credit against the numbered account. Most customer account numbers began with the prefix "1" or "2," but several were assigned the prefix "5." These so-called "5" accounts were the focus of the criminal prosecution.
 
 
 13
 Payments received on the "1" and "2" accounts were deposited in an IE & E corporate account at Bank of New England. Payments on the "5" accounts, however, were given to DiRico, who deposited them at the Abington Savings Bank, where he maintained several personal accounts. DiRico converted most of the "5" account receipts into cash, money orders, and cashier's checks, thereby frustrating any effort to trace the disposition of those funds.
 
 
 14
 At the end of each month, IE & E employees generated reports related to cash flow, accounts receivable, and payments received. Those reports were secured in bound volumes and placed into storage. Reports related to the "5" accounts were stored separately. And, although receipts from all customers, including payments to the "5" accounts, were entered into the computer system, neither Lynch (who did not know how to operate the computer system) nor the outside accountants were aware of the existence of the "5" accounts. So, when the outside accountants prepared the corporate tax return for the fiscal year ending June 1987, they did not include monies received from the "5" accounts in calculating corporate gross income.
 
 
 15
 At trial, DiRico admitted that he knew the accountants were unaware of the "5" account receipts. He also conceded that he under-reported gross receipts on IE & E's 1987 corporate tax return. However, he claimed that despite under-stating its gross receipts, the company actually paid the proper amount of corporate tax and, therefore, the return was "correct." He also argued that the false information on the 1987 corporate tax return was not "material" so long as IE & E actually paid the proper amount of federal tax due.
 
 
 16
 With regard to the "materiality" element of the false subscription charge, the trial judge followed then-existing practice and gave the following instruction:
 
 
 17
 It also must be a return that's false as to a material matter. That is, it was untrue when made and then known by the defendant to be untrue when he was making it. Materiality is a question largely for the Court to determine. The question of whether or not it is material is one on which I will instruct you. And I will instruct you that the amount of the gross receipts or, more accurately here because we deal with an accrual basis taxpayer, the sales reported on a corporate return is a material matter within the meaning of this particular statute.
 
 
 18
 (Trial Transcript, volume 14 at 104.) DiRico objected to the court's instruction in a timely fashion.
 
 DISCUSSION
 
 19
 The Supreme Court's recent opinion in United States v. Gaudin, supra, makes it clear that when "materiality" is an element of a charged crime and takes on a factual aspect, the jury must decide whether that element has been proved beyond a reasonable doubt. Plainly, an instruction that removes from the jury's consideration one of the essential factual elements of a crime charged cannot stand. Jury instructions cannot operate to deprive a criminal defendant of his or her constitutional "right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged." Gaudin, 115 S.Ct. at 2320.
 
 
 20
 In Gaudin, the defendant was charged with making material false statements on Department of Housing and Urban Development ("HUD") loan documents in violation of 18 U.S.C. Sec. 1001. The trial court instructed the jury that the government was required to prove that the alleged false statements were material to the activities and decisions of HUD, and further instructed the jury that the "issue of materiality ... is not submitted to you for your decision but rather is a matter for the decision of the court. You are instructed that the statements charged in the indictment are material statements." Id. at 2313. The jury convicted the defendant, but the Court of Appeals for the Ninth Circuit reversed, reasoning that taking the question of materiality from the jury violated rights guaranteed to the defendant by the Fifth and Sixth Amendments to the Constitution. The Supreme Court subsequently agreed, holding that:
 
 
 21
 The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality.
 
 
 22
 Id. at 2314.
 
 
 23
 In the context of this appeal, we discern no obvious or substantive distinction between the "materiality" element of 18 U.S.C. Sec. 1001 and the "materiality" element of the crime with which DiRico was charged, i.e. false subscription to a tax return in violation of 26 U.S.C. Sec. 7206(1). See, e.g., Waldron v. United States, --- U.S. ----, 1995 WL 455037 (October 16, 1995) (remanding case for reconsideration of defendant's conviction under 18 U.S.C. Sec. 1014 (false statements to a federally insured bank) in light of Gaudin ).
 
 
 24
 The government concedes materiality is an essential element of the crime of false subscription. It argues, however, that as a matter of law "gross receipts (sales) are a material matter in the computation of income from a business and the amount of tax due on that income." (Supplemental Brief for the Appellee, at 11.) Accordingly, the government contends that, even in the wake of United States v. Gaudin, a trial judge may properly instruct a jury that statements on a tax return regarding gross receipts are "material" as a matter of law. Given the facts of this particular case, we are constrained to disagree.
 
 
 25
 DiRico's defense was straightforward: he argued that if deductible expenses equaled or exceeded gross receipts, any statement of gross receipts could not be material because that information could have had no tangible effect on the amount of tax due ---- proper calculation of which being the very purpose of completing and filing the return in the first place. While the government is correct in asserting that an accurate statement of gross receipts is essential to a correct computation of taxable income (as distinguished from taxes due and payable), a reasonable trier of fact might find a misstatement of gross receipts not material in the context of a criminal trial for false subscription, where legitimately deductible expenses equaled or exceeded actual gross receipts (i.e., when an accurate statement of gross receipts would not have affected the amount of taxes due the government). Therefore, the question of "materiality" in this particular case is at best a mixed question of law and fact and so should be submitted to a jury under Gaudin 's rationale.
 
 
 26
 The government's argument that the faulty jury instruction amounted to harmless error is appealing, but we are persuaded that in light of the fact that the trial court's instruction was intended to and did effectively direct a finding of "materiality," the only proper disposition is to remand.
 
 
 27
 Our analysis of this issue begins with the Supreme Court's opinion in Chapman v. California, 386 U.S. 18 (1967), where the Court recognized that some constitutional errors in the course of a criminal trial may be harmless and, therefore, do not require reversal of a conviction. The Court has since explained the Chapman harmless error analysis as follows:
 
 
 28
 Consistent with the jury-trial guarantee, the question [Chapman ] instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand.... The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict in this trial was surely unattributable to the error.
 
 
 29
 Sullivan v. Louisiana, 113 S.Ct. 2078, 2081 (1993) (citations omitted). While most constitutional errors have been held amenable to the Chapman harmless error analysis, others are of such a fundamental nature that they will always invalidate a conviction. Accordingly, "[t]he question in the present case is to which category the present error belongs." Id.
 
 
 30
 The Due Process Clause of the Fifth Amendment guarantees that no one shall be convicted of a criminal offense "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). That constitutional guarantee is obviously interrelated with the defendant's Sixth Amendment right to trial by jury:
 
 
 31
 The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." ... The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty." Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence.
 
 
 32
 Sullivan, 113 S.Ct. at 2080. In Sullivan the Court reasoned that because the trial court erroneously defined "reasonable doubt" for the jury, the harmless error analysis articulated in Chapman was inapplicable:
 
 
 33
 Since, for the reasons described above, there had been no jury verdict within the meaning of the Sixth Amendment, the entire premise of Chapman review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the same verdict of guilty-beyond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no object, so to speak, upon which harmless-error scrutiny can operate. The most an appellate court can conclude is that a jury would surely have found petitioner guilty beyond a reasonable doubt--not that the jury's actual finding of guilty beyond a reasonable doubt would surely not have been different absent the constitutional error. That is not enough. The Sixth Amendment requires more than appellate speculation about a hypothetical jury's action, or else directed verdicts for the State would be sustainable on appeal; it requires an actual jury finding of guilty.
 
 
 34
 Id. at 2082 (citations omitted). So, where a jury has not rendered a verdict that addresses every essential element of the charged offense, and therefore has not rendered a verdict on the crime charged, the question of whether the same verdict would have been rendered absent the constitutional error is meaningless. Here, because the jury did not determine whether the government had proved, beyond a reasonable doubt, the existence of an essential factual element of the crime of false subscription (i.e., materiality), there was "no jury verdict within the meaning of the Sixth Amendment" and harmless error analysis is inapplicable. Id. at 2081-82.
 
 
 35
 In light of our conclusion that, at least in this case, "materiality" was an essential factual element of the crime charged, the trial court's withdrawal of that issue from the jury constituted a "structural defect" in the trial process, Arizona v. Fulminante, 499 U.S. 279, 310 (1991), which requires reversal of DiRico's conviction. Simply stated, we cannot conclude on appeal that the government proved "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," since a verdict of guilt as to every essential element was never obtained. Chapman, 386 U.S. at 24.
 
 CONCLUSION
 
 36
 For the foregoing reasons, defendant's conviction is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 Of the District of New Hampshire, sitting by designation