COMMONWEALTH *vs.* DOYLE H. MOORE

No. 96-P-1583.

Suffolk. October 10, 1997. - January 5, 1998.

Present: BROWN, LAURENCE, & SPINA, JJ.

*Taxation,* Income tax, Income tax returns. *Domicil. Words,* "Domicil," "Wilful," "Material."

At the trial of an indictment for wilfully attempting to evade or defeat Massachusetts income tax in violation of G. L. c. 62C, § 73(*a*), the evidence was sufficient to establish that the defendant was domiciled in Massachusetts when he received a capital gain from the sale of stock, that he knew he was required to pay taxes in Massachusetts on such gain, and that he attempted to create the impression of domicile in New Hampshire with the intent to evade taxation. [132-135]

At the trial of indictments for wilfully subscribing false Massachusetts tax returns in violation of G. L. c. 62C, § 73(*f*)(1), the evidence was sufficient to establish that the defendant's false statements as to his domicile were material, that is, they hindered the Department of Revenue in assessing the defendant's tax liability. [135-136]

INDICTMENTS found and returned in the Superior Court Department on November 19, 1993.

The cases were tried before *George A. O'Toole, Jr.,* J.

*David J. Burgess* for the defendant.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

SPINA, J. The defendant appeals from his conviction by a jury of wilfully attempting to evade or defeat Massachusetts income tax in 1991, G. L. c. 62C, § 73(*a*), and wilfully subscribing false Massachusetts tax returns in 1991 and 1992, G. L. c. 62C, § 73(*f*)(1).[1] The defendant claims that the judge committed error by denying his motion for a required finding of not guilty as to each charge. We affirm.

---

[1]The defendant has not appealed his conviction of wilfully delivering a false statement to the Commissioner of Revenue in 1993, G. L. c. 62C, § 73(*g*).

The defendant's domicile, as of June 28, 1991, the day he received a significant capital gain, was a major focus of the trial. The evidence on which the jury could have based their verdict, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), is summarized as follows. In 1979, the defendant founded Prison Health Services, Inc. (PHS), an organization which provided contract health services to prison systems. At that time, he lived in Wilmington, Delaware, with his wife and son. He left his employment with PHS in December, 1990, but retained a significant ownership interest in the company. At a New Year's Eve party that year he told his wife that he was going to move to Boston to take a position with the Massachusetts Department of Correction (DOC). PHS agreed to waive portions of a noncompete agreement, which the defendant had signed when he left the company, so that he could move to Massachusetts and work for the DOC. At the end of January, 1991, the defendant left Delaware and moved to Boston. In February, he began work as a regular employee of the DOC. He lived in a furnished house in the Jamaica Plain section of Boston with two friends until the end of July, 1991. He opened a checking account with BayBank (Massachusetts) on February 4, 1991, and gave as his address the house in Jamaica Plain. The defendant's gold Mastercard records indicated that his address until October, 1991, was in Jamaica Plain.

On April 16, 1991, the defendant was divorced by decree of a Delaware court. In March, 1991, he filed a response to his wife's emergency petition for alimony in which he stated that he "[did] not reside in the marital home and [had] not done so since February 1st 1990, when he established his residence in Boston, Massachusetts, where he [was] currently employed."[2] He returned to Delaware twice in the first half of 1991 to visit his wife, both times before his divorce.

On June 4, 1991, the defendant wrote a letter to his son asking the boy to give serious thought to living in Boston with him the following year. The defendant also told his ex-wife in early July, 1991, that he had been involved with a female co-worker since April, and that together they were looking for an apartment in Boston. He had viewed some apartments at Devonshire Place in Boston on several occasions in February and March, 1991. He originally had expressed an intent to rent an apart-

---

[2]The appropriate date was actually February 1, 1991, because it was undisputed that Moore did not go to Massachusetts until January, 1991.

ment at Devonshire Place by April 15 or May 1, 1991, but put the matter on hold until he could settle on a date. On May 20, 1991, he arranged to see a particular apartment again. Thereafter, a lease was forwarded to him to sign. On July 19, 1991, the defendant contacted Devonshire Place and asked the rental agent to put the lease in the name of his sister because he did not want his name to appear on it. The lease was executed on July 26 for a thirteen-month tenancy beginning August 1, 1991. All payments under the lease were made in his sister's name or through her account, but the defendant was the source of all funds for payments. The two-month deposit was paid through his girlfriend, but in his sister's name. He moved to Devonshire Place on August 9, 1991. His sister, who signed the lease, was seen at Devonshire Place on only one occasion by its staff. His friends and coworkers were aware the defendant lived at Devonshire Place and visited him there. Some had his telephone number at the apartment.

On June 5, 1991, he registered to vote, opened a bank account, and arranged for a post office box in New Hampshire. He had until then been a registered voter in Delaware. On July 18, 1991, the defendant changed the registration of his motor vehicle from Delaware to New Hampshire. Between June 5, 1991, and the end of 1992 the defendant wrote 441 checks on his New Hampshire bank account, of which only four were cashed or deposited in New Hampshire; and the four were made payable to New Hampshire governmental entities. During that same period of time, the defendant made a total of two credit card charges and one automated teller machine (ATM) transaction in New Hampshire. The last check he wrote on his Wilmington (Delaware) Trust Company account was dated February 4, 1991, and he made only a few ATM transactions in Delaware that year. By contrast, his bank accounts indicated nearly seventy-five per cent of his ATM transactions in 1991 occurred in Massachusetts.

The defendant also arranged to "rent" a cottage in Amherst, New Hampshire, from the father of a friend. He prepared a two-year lease for the cottage beginning June 1, 1991, with a monthly rental of $700. The owner, however, wanted the exclusive right to use the cottage on weekends and rejected the proposed lease. Because the defendant said he needed the cottage only for business deals, the owner agreed to let him use it weekdays. The defendant never paid any rent or utilities for it.

The owner, who went to the cottage two to three weekends each month, saw the defendant there once in two years and saw his car there approximately twice. He saw no evidence that the defendant stayed overnight at the cottage: there were no clothes in the closet (though he saw a travel bag and a toothbrush on one occasion); there was no laundry left about; and the furniture was always in the position the owner last left it. The owner met the defendant in New Hampshire about a dozen times during the two years after June 1, 1991. The defendant asked the owner about fifteen times (occasionally by phone) to check his New Hampshire post office box and bring any mail to him in Boston. He never asked that the mail be left at the cottage.

In May, 1991, PHS offered to purchase the defendant's shares in the company. He accepted the offer in writing on May 30, 1991. On June 28, 1991, the defendant received $2,001,600 for his stock. He filed nonresident Massachusetts income tax returns in 1991 and 1992, listing his New Hampshire post office box as his address. Although he identified his PHS sale proceeds on his 1991 Massachusetts nonresident tax return, he did not pay any income tax on those proceeds because they were identified as a non-Massachusetts source of income. His only 1991 income taxed in Massachusetts, therefore, was his earnings with the DOC. He filed a 1991 Delaware tax return declaring that he resided in Delaware from January 1, 1991, to May 31, 1991, and thereafter resided in New Hampshire. He also filed a 1991 New Hampshire dividend and interest tax return declaring that his residency in New Hampshire began June 1, 1991, and continued throughout that calendar year, and he identified income that included interest on the proceeds of his sale of PHS stock.

1. *Wilfully attempting to evade and defeat tax.* The defendant argues that the Commonwealth failed to provide sufficient evidence to establish that he was domiciled in Massachusetts when he received capital gain income from the sale of his PHS shares. He asserts that, as of June 28, 1991, his ties to Delaware were still substantial and long-term.[3] He further asserts that the Commonwealth failed to establish that he had wilfully attempted

[3]At trial, defense counsel stated in his opening to the jury that the defendant was never domiciled in Massachusetts, and that in June, 1991, he changed his residence from Delaware to New Hampshire. On appeal, the defendant has changed his emphasis and now argues that the Commonwealth failed to prove he was no longer domiciled in Delaware as of June 28, 1991.

to avoid paying Massachusetts taxes on such capital gain income.

General Laws c. 62C, § 73(*a*), provides, in pertinent part, as follows:

> "(a) Any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the statutes referred to in section two or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than one hundred thousand dollars . . . or by imprisonment for not more than five years, or both, and shall be required to pay the costs of prosecution."

Income that was received by an individual who was domiciled in Massachusetts when he received the income is subject to Massachusetts tax. See *Green* v. *Commissioner of Corps. & Taxn.*, 364 Mass. 389, 391 (1973).

Domicile is "the place of one's actual residence 'with intention to remain permanently or for an indefinite time and without any certain purpose to return to a former place of abode.' " *Hershkoff* v. *Registrars of Voters of Worcester*, 366 Mass. 570, 578 (1974), quoting from *Opinion of the Justices*, 365 Mass. 661, 663 (1974). "The requisite intention is to make the place one's home for the time at least." *Hershkoff, supra* at 578. A person can have only one domicile at a time, and it is usually the center of the person's domestic, social, and civil life. *Id.* at 576.

The ascertainment of an individual's domicile is primarily a question of fact. *Tuells* v. *Flint*, 283 Mass. 106, 109 (1933). It does not depend merely upon one fact or combination of circumstances, "but upon all of the factors disclosed in a particular case." *Commonwealth* v. *Davis*, 284 Mass. 41, 50 (1933). We recognize that mere absences from home, even for somewhat prolonged periods of time, do not constitute a change of domicile. *Tuells, supra.*

On June 28, 1991, the day the defendant received the proceeds from the sale of his PHS shares, Massachusetts was the site of his employment, his abode, and his social life. He had many friends in Boston. There was substantial evidence that any plans the defendant may have had of returning to Delaware had faded well before June 28, 1991. He was enjoy-

ing his life in Massachusetts, and he intended to stay in the Commonwealth at least for the present time. He asked his son to join him in Boston, and his marriage in Delaware had ended with ongoing hostilities. His 1991 Delaware tax return indicated his residence there ended May 31, 1991. The evidence also supported an inference that the defendant's averred ties to New Hampshire were a contrivance he devised only after deciding to accept PHS's offer to purchase his stock, and that he did so to conceal the extent of his domicile in Massachusetts. The Commonwealth presented sufficient evidence to establish that as of June 28, 1991, the defendant was domiciled neither in Delaware nor in New Hampshire, but rather in Massachusetts. His remaining ties to Delaware were minimal.

Neither the Supreme Judicial Court nor this court has defined what constitutes the "wilful" attempt to evade or defeat a tax. However, the Supreme Judicial Court has stated that the interpretation of Massachusetts tax provisions should be consistent with the interpretation of identical Federal income tax provisions. *B.W. Co.* v. *State Tax Commn.*, 370 Mass. 18, 22-23 (1976). The language of 26 U.S.C. § 7201 (1988) is identical to the language of G. L. c. 62C, § 73(*a*), and provides that "[a]ny person who wilfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall . . . be guilty of a felony." The Supreme Court has construed the meaning of the word "wilfully" as used in 26 U.S.C. § 7201 as the "voluntary, intentional violation of a known legal duty." *Cheek* v. *United States*, 498 U.S. 192, 201 (1991). "Wilfulness" requires the government to prove that "the law imposed a duty on the defendant, that the defendant knew of this duty, and that he intentionally violated the duty." *Ibid.*

To everyone who mattered to the defendant, he lived where he said he lived: Massachusetts. Although his friends had known of his apartment first in Jamaica Plain and then at Devonshire Place, they generally were unaware of the New Hampshire cottage. His employer and good friend lived with him in the house at Jamaica Plain and later had the defendant's telephone number at Devonshire Place, though not the telephone number in New Hampshire. His former wife was aware he had a girlfriend and knew where he lived. He kept no secrets from his inner circle of friends. The only persons he told about living in New Hampshire were the Massachusetts Department of Revenue

(DOR), and the corresponding agencies in Delaware and New Hampshire. From the DOR he concealed his address in Massachusetts, and for purposes of deceiving the DOR he created a paper domicile in New Hampshire. The evidence sufficiently established that the defendant was domiciled in Massachusetts, that he knew he was required to pay taxes on any capital gain income that he received from the sale of his PHS stock, that in anticipation of the receipt of such capital gain income he attempted to conceal his Massachusetts domicile and create the false impression of a domicile in New Hampshire, and that he did so with the intention of evading or defeating the Massachusetts tax on the gain from the sale of that stock. The denial of his motion for a required finding of not guilty was not error.

2. *Wilfully subscribing false tax returns.* The defendant next asserts that the indictments charging him with wilfully subscribing false Massachusetts tax returns in 1991 and 1992 should have been dismissed because the Commonwealth failed to present any evidence that his allegedly false statements about not being domiciled in Massachusetts were material misrepresentations. He argues that even if false, such statements would only have been material if they had reduced the amount of income tax which he was required to pay.

General Laws c. 62C, § 73(*f*)(1), provides, in pertinent part, as follows:

"(f) Any person who: —

(1) Willfully makes and subscribes any return, statement, or other document, that contains or is verified by a written declaration that is made under the penalties of perjury, and that he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than one hundred thousand dollars . . . or by imprisonment for not more than three years, or both, together with the costs of prosecution."

Neither the Supreme Judicial Court nor this court has interpreted the term "material" with respect to this statutory provision. However, the United States Court of Appeals for the First Circuit has considered the "materiality" element of a false subscription charge with respect to a parallel Federal statute, 26

U.S.C. § 7206(1) (1989).[4] In *United States* v. *DiRico*, 78 F.3d 732, 736 (1st Cir. 1996), the Court of Appeals stated that the government "need not prove an actual tax deficiency in *any* false subscription case in order to demonstrate that a taxpayer's false statement was 'material' [emphasis original]. The government need only prove to the jury, beyond a reasonable doubt, that the alleged false statement at issue could have influenced or affected the IRS in carrying out the functions committed to it by law." *Ibid.* The government can satisfy this burden by showing that a defendant's false statements could hinder the efforts of the IRS in monitoring and verifying the defendant's tax liability. *Id.* at 736 n.1.

The Commonwealth presented evidence that the defendant's tax liability would be different depending upon whether he was domiciled in Massachusetts or in New Hampshire. As a Massachusetts domiciliary, the defendant would have incurred a 1991 tax liability of $119,450 on the gain realized from the sale of his PHS stock. By declaring New Hampshire as his domicile, he had no such liability. In addition, the defendant avoided a 1992 tax liability on miscellaneous interest and dividends by declaring a New Hampshire domicile. The accuracy of his 1991 and 1992 Massachusetts tax returns, and therefore his tax liability, was contingent upon his domicile. The defendant's false statements about his domicile hindered DOR's efforts in assessing his tax liability. The misrepresentations were, therefore, "material." There was no error in the denial of his motion for a required finding of not guilty.

*Judgments affirmed.*

---

[4]Title 26 U.S.C. § 7206(1) provides, in pertinent part, as follows:

"Any person who —

(1) *Declaration under penalties of perjury.* Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned not more than 3 years, or both, together with the costs of prosecution."