## COMMONWEALTH *vs.* CHARLES KINGSTON.

No. 96-P-2047.

Suffolk. June 5, 1998. - March 12, 1999.

Present: JACOBS, DREBEN, & FLANNERY, JJ.[1]

*Taxation,* Income tax, Income tax returns. *Evidence,* Intent. *Intent. Mistake. Practice, Criminal,* Findings by judge. *Words,* "Wilfully."

Evidence at the trial of an indictment for wilfully filing materially incorrect Massachusetts income tax returns was sufficient to prove beyond a reasonable doubt that the defendant subscribed to false returns in the years in question with the specific intent to violate the law. [445-447]

Where evidence at the trial of an indictment for wilfully filing materially incorrect Massachusetts income tax returns was sufficient to warrant the judge's finding the defendant guilty beyond a reasonable doubt, the judge's allowance of the defendant's request for a ruling stating that the Commonwealth had not proved the absence of good faith mistake and had not proved intent was sufficiently unclear so as to raise a question whether the judge had appropriately instructed himself as the finder of fact; the matter was remanded for further consideration. [447-451]

INDICTMENT found and returned in the Superior Court Department on February 16, 1993.

The case was heard by *Charles F. Barrett,* J.

*Wendy Sibbison (John M. Callahan* with her) for the defendant.

*Cathryn A. Neaves,* Assistant Attorney General, for the Commonwealth.

JACOBS, J. Following a jury-waived trial, a Superior Court judge found the defendant guilty under G. L. c. 62C, § 73(*f*)(1), as inserted by St. 1983, c. 233, § 41, of wilfully filing materially incorrect Massachusetts income tax returns for the years

---

[1]The case was heard by a panel which included Justice Flannery. After his death, Justice Kass was added to the panel pursuant to Mass.R.A.P. 24(a), 365 Mass. 872 (1974).

1987, 1988, and 1990.[2] The statute provides criminal penalties for a "person who . . . [w]illfully makes and subscribes any return . . . that is made under the penalties of perjury, and that he does not believe to be true and correct as to every material matter." Our review of the defendant's appeal from those tax perjury findings centers on two issues: (1) the sufficiency of the evidence, and (2) the effect of the judge's allowance of one of the defendant's requests for rulings. We reverse the findings and remand the case to the Superior Court.

1. *Sufficiency of the evidence.* There is ample evidence that the returns for the years in question were signed by the defendant under the penalties of perjury and that they materially understated his income. The defendant argues, however, that there was insufficient evidence that he acted "wilfully" when he made and signed the returns. This court, in *Commonwealth* v. *Moore*, 44 Mass. App. Ct. 129, 134 (1998), in defining "wilfully" as contained in our tax evasion statute, G. L. c. 62C, § 73(*a*), applied the Supreme Court's interpretation of the cognate Federal income tax provision which construed the word to mean the "voluntary, intentional violation of a known legal duty." *Cheek* v. *United States*, 498 U.S. 192, 201 (1991). See *United States* v. *Bishop*, 412 U.S. 346, 359-360 (1973); *United States* v. *Pomponio*, 429 U.S. 10, 11 (1976). Given that this definition has "a uniform meaning in the several [Federal tax] statutes," *United States* v. *Bishop, supra* at 359, and the absence of any contrary indication under our law, we accept it for purposes of the tax perjury statute here involved. Consistent with interpretations of the Federal tax perjury statute, 26 U.S.C. § 7206(1) (1994), the Commonwealth is required, in a prosecution under G. L. c. 62C, § 73(*f*)(1), to prove beyond a reasonable doubt that the defendant subscribed to false returns for the years in question "with the specific intent to violate the law." *United States* v. *Hanson*, 2 F.3d 942, 945 (9th Cir. 1993).[3]

The evidence, viewed in the light most favorable to the Com-

---

[2]The defendant was indicted on two other counts. The Commonwealth filed a nolle prosequi on a count for the year 1989 before opening statements, and on a count for the year 1991 immediately before the close of its case.

[3]Cases under 26 U.S.C. § 7206(1) are different from tax evasion cases under § 7201 with respect to consideration of the amount of unreported income since § 7201 requires the existence of a tax deficiency, *Sansone* v. *United States*, 380 U.S. 343, 351 (1965), and § 7206(1) requires only that the understatement be material. *United States* v. *DiRico*, 78 F.3d 732, 736 (1st Cir. 1996). Under § 7206(1), several Federal circuits "have concluded that any

monwealth, is as follows: Over the years at issue, the defendant conducted a public relations consulting business in addition to serving as a deputy tax collector for the city of Springfield. In the course of his municipal duties, the defendant collected overdue taxes and a collection fee directly from taxpayers and faithfully followed the reporting process established by the city, providing it with a detailed accounting of his collections. He pursued his private consulting business through a separate office and bank account. Income from both occupations was reported by the defendant in his tax returns on a single line on a Schedule C "Profit and Loss from Business" form.[4] In exchange for his services, the defendant's private clients paid him by check and generally, but not invariably, issued a form 1099 reflecting the amount reported to the taxing authorities as having been paid.[5] On occasion, the amount reported in a form 1099 was less than the amount paid to the defendant.

In each of the years in question, the defendant reported consulting income which was greater than the amount reflected in the forms 1099 received by him but less than his actual gross income. The unreported amounts were approximately $55,475 for 1987, $58,900 for 1988, and $21,200 for 1990.[6] The 1987 discrepancy primarily reflected the difference between the amount reported on a client's 1099 and the amount actually paid to the defendant, and a lump sum of $50,000 paid by check by a limited partnership which did not issue a form 1099.

---

failure to report income is material." *United States* v. *Holland,* 880 F.2d 1091, 1096 (9th Cir. 1989). "This approach is consistent with the statutory text and with precedent. Any concern that trivial mistakes will be prosecuted is obviated by the stringent requirement of specific intent to violate the law." (Citations omitted.) *Ibid.*

[4]The defendant reported schedule C gross receipts of $151,369 in 1987, $188,249.21 in 1988, and $192,831.50 in 1990. These amounts included payments from the city of Springfield of $64,544 in 1987, $98,199.21 in 1988, and $57,734 in 1990.

[5]A Form 1099 is an information return required by Federal law to be filled out by payers of various types of payments and forwarded to the recipient and the Internal Revenue Service. See *United States* v. *Doan,* 710 F.2d 124, 125 (3d Cir. 1983). At trial, a record keeper of one of the defendant's clients acknowledged that the purpose of a form 1099 is to tell a person how much compensation he received.

[6]We take these figures from the Commonwealth's brief. The Commonwealth's best evidence at the close of its case can be construed as establishing greater amounts of unreported income ($69,865 in 1987, $60,790 in 1988, and $23,442 in 1990).

The 1988 discrepancy included a $3,500 difference between income received from a client and the amount reported on that client's form 1099. Unreported also in that year was the defendant's one-half share of the proceeds from the sale of real estate in Maine.[7] The 1990 discrepancy included differences between the amounts received by the defendant and the amounts reflected on forms 1099 of two clients and $15,000 from a client who did not provide the defendant with a form 1099. During the periods in question, the defendant's returns also accurately reflected receipts from several clients who did not supply the defendant with forms 1099. His unreported income represents approximately twenty-seven percent, twenty-three percent, and ten percent of his gross income in 1987, 1988, and 1990 respectively.[8]

The amount of the defendant's unreported income, his meticulous record keeping and reporting of his tax collection income, his accurate accounting of monies paid by some clients who did not provide him with forms 1099, and his faithful reporting of all his income from consulting and tax collecting in 1989 and 1991, all support a reasonable inference that the defendant was aware of precisely what was paid to him in each of the years in question. This inference, especially when coupled with the reasonable inference that the defendant was unlikely to have overlooked the receipt of the $50,000 lump sum payment in 1987 (his largest single receipt in that year), of substantial real estate profits in 1988, and of $15,000 from one client in 1990, support the further conclusion that the defendant specifically intended not to report all of his receipts in the years in question and that he signed his tax returns for those years knowing of the underreported income. Accordingly, the defendant's motion for a required finding of not guilty properly was denied.

2. *The defendant's request for rulings.* At the close of the evidence, the defendant filed twenty-six numbered requests for rulings pursuant to Mass.R.Crim.P. 26, 378 Mass. 897 (1979).

---

[7]In 1985, the defendant and a friend purchased real estate in Maine for $42,000. The purchase was funded entirely by a loan from a Maine bank. In 1987, they sold a portion of the property for $25,000, all of which was applied toward their outstanding loan. In 1988, they sold the remainder of the land for $100,000, with the defendant receiving three checks totaling approximately $34,000.

[8]These percentages would be considerably higher if only the defendant's consulting receipts were taken into account and his accurately reported tax collecting receipts were not included.

Such requests "are 'intended to secure for the purpose of review a separation of law from fact in cases where the trial judge acts both as factfinder and applier of law.' Reporters' Notes to [rule 26]." *Commonwealth* v. *Schafer*, 32 Mass. App. Ct. 682, 692 (1992). See generally Smith, Criminal Practice & Procedure § 1945 (2d ed. 1983). Four days after taking the case under advisement and the day before he entered his verdict, the judge filed his order with respect to each of the defendant's requests for rulings. At issue is the effect of the judge's allowance, without comment, of request for ruling number 13 which states: "The Commonwealth's evidence failed to prove any common scheme, absence of mistake, intent or motive."[9] The defendant claims that this ruling entitles him to a reversal of his convictions because it concerns his affirmative defense of mistake, and effectively nullifies the intent required to support a general finding of guilt.

The Commonwealth argues that the defendant takes ruling 13 out of context because it pertains solely to its claim of an alleged conflict of interest between the defendant's municipal and private endeavors and not to the issues of mistake and intent. In support, the Commonwealth notes that ruling 13 appears in the midst of several other rulings sought by the defendant to establish a lack of nexus between any such conflict and the crimes charged. Consequently, it claims that ruling 13 must be construed narrowly in light of the judge's denial of other of the defendant's requested rulings to the effect that the Commonwealth's evidence was insufficient to prove wilful underreporting. We cannot give ruling 13 such a limited construction. A fair reading of the transcript indicates that the judge, before and immediately following closing arguments, ruled that he was removing as an issue in the case any connection between the defendant's alleged conflict of interest and his underreporting of income. Shortly thereafter, defendant's counsel announced his waiver of requests for rulings dealing with conflict of interest, starting with those numbered 8 and 9. When the judge suggested his ruling "takes us through [request] 15," defense

---

[9]We read "failed to prove" as referring to the sufficiency of the evidence. "[I]t is an accepted rule of practice that a request, predicated upon the sufficiency of the evidence to warrant a finding which is decisive of an issue in the case, is a 'proper,' 'pertinent' or 'relevant' request for a ruling of law and not a request for a finding of fact, and must be passed upon by the judge." *Stella* v. *Curtis*, 348 Mass. 458, 461 (1965).

counsel responded: "[W]ith one exception, your Honor. I think that 13 is different — a different matter. That's the standard language of the cases on common scheme, or absence of mistake, intent or motive under the cases." After defendant's counsel cited by name three cases purportedly representing the case law to which request for ruling 13 applied, the judge unequivocally acknowledged that ruling 13 was not waived by stating: "All right, you're retaining 13." Given this acknowledgment and the fact that the judge did not explicitly limit his ruling, as he carefully did with several other requests, we consider ruling 13 literally and as stated and not limited to any alleged motive or conflict of interest. We address only the questions relating to "absence of mistake" and "intent" because they were the only live issues at the time ruling 13 was made.

The Commonwealth concedes that mistake is an affirmative defense in a tax perjury case. "It is a complete defense to the crime of filing a false tax return to make a good-faith mistake in the return or to have a good-faith belief that the tax laws have been satisfied." *United States* v. *Morris*, 20 F.3d 1111, 1115 n.4 (11th Cir. 1994), citing *Cheek* v. *United States*, 498 U.S. at 202. It argues, however, that the defendant did not "present evidence" of mistake or sufficiently raise it as an affirmative defense. While the only evidence introduced by the defendant was in the form of character witnesses who testified to his reputation for truthfulness and veracity, testimony was elicited during cross-examination of witnesses called by the prosecution to the effect that certain clients underreported monies paid to the defendant on 1099 forms prepared by them while others did not supply him with 1099 forms and that the defendant's reliance on a 1099 from a client could be reasonable. Also, during direct examination of the defendant's tax preparer, the Commonwealth adduced testimony that the defendant was not "detailed" in his record keeping and provided him only with "a pack of 1099's and a yellow sheet of paper . . . that would have the sources of income and the amount." Defendant's counsel, in argument, stressed the defense of good-faith mistaken reliance on the 1099s received by the defendant, and "confusion as to the law in Maine." The prosecutor recognized the issue by arguing "[w]hat is required by the Commonwealth is to show that [unexplained underreporting] was not an inadvertent error."

Whether a defense has been fairly raised is a matter of law

for the court. We are informed by the cases dealing with the analogous issue of when sufficient evidence of an affirmative defense has been introduced as to require an instruction that it is the Commonwealth's burden to disprove it beyond a reasonable doubt. Such a defense may be raised not only through witnesses offered by the defendant but also "may enter the case during the prosecution's case in chief, either . . . [by] direct questioning or . . . cross-examination." *Commonwealth* v. *Kostka*, 370 Mass. 516, 526-527 & n.7 (1976). See *Commonwealth* v. *Laliberty*, 373 Mass. 238, 245 (1977); *Commonwealth* v. *Monico*, 396 Mass. 793, 798 (1986). See also *United States* v. *Rodriguez*, 858 F.2d 809, 814 (1st Cir. 1988) ("[A] defendant may shoulder this burden of production by pointing to evidence adduced during the government's case . . . or . . . by reference to any probative material in the record"). Viewed in the light most favorable to the defendant, *Commonwealth* v. *Hart*, 428 Mass. 614, 615 (1999), the evidence of good faith mistake, although it did not address the entire spectrum of the government's proof, was sufficient to warrant a ruling requiring the Commonwealth to assume the burden of proving absence of mistake.[10]

When viewed in the context of the judge's careful and adroit management of the trial, his rejection of rulings stating that the Commonwealth's evidence was insufficient to prove willful underreporting, and his incredulity, expressed during the trial, that large sums such as the $50,000 from the limited partnership and the proceeds from the sale of Maine real estate mistakenly could have been overlooked, it might appear that ruling 13 is simply an anomaly, or the byproduct of the judge having become ensnared by an ambiguous and misleading request for ruling. See *Stella* v. *Curtis*, 348 Mass. 458, 461 (1965). Such speculation, however, is belied by the judge's otherwise careful treat-

---

[10]The precise quantum of proof necessary to discharge the defendant's burden of production and thereby to impose upon the Commonwealth the burden of proof as to an affirmative defense has not been defined by our courts. *Commonwealth* v. *Mills*, 400 Mass. 626, 633-635 (1987) (O'Connor, J., dissenting). Compare *Commonwealth* v. *Hall*, 45 Mass. App. Ct. 146, 153 (1998) (discussing a refusal to give a jury instruction this court said, "None of this evidence . . . could have left the jury with a reasonable doubt about the defendant's criminal responsibility"). Because we conclude that the evidence could be viewed as raising a reasonable doubt whether the defendant wilfully signed returns he believed to be false, we need not determine whether a more relaxed standard is applicable.

ment of the other requests for rulings. Moreover, if the judge viewed ruling 13 as applying solely to the issue of good faith mistake as it related to some of the smaller amounts of gross receipts not reported by the defendant, he could have expressly limited ruling 13 to those amounts. See *Commonwealth* v. *Giles*, 353 Mass. 1, 17 n.12 (1967). "If that, however, was his intention the judge did not make this clear. The ruling leaves us sufficiently uncertain how the judge instructed himself [on the issue of mistake] to cause us to reverse the judgment[s]." *Id.* at 18. Our uncertainty is only compounded by the inclusion in ruling 13 of the word "intent," given the necessity of proof by the Commonwealth that the defendant specifically intended to violate the law when he signed the returns for the years in question. While the meaning of the word "intent" in the context of the ruling that "[t]he Commonwealth's evidence failed to prove any . . . intent . . ." is not clear, we cannot ignore that its inclusion in the ruling may reflect a conclusion by the judge, based on his weighing of the evidence, that an elemental aspect of tax perjury had not been proved. The findings, therefore, must be set aside. Because, as we previously have indicated, the evidence viewed from the Commonwealth's perspective was sufficient to convict, we do not order judgment for the defendant but remand the case to the Superior Court for further proceedings.[11]

*So ordered.*

---

[11]We do not discuss the other issues raised by the defendant except to note that to the extent they may arise upon retrial, they are without merit.