## COMMONWEALTH *vs.* DANA R. HOWARD.

No. 03-P-1639.

Berkshire. August 16, 2004. - November 4, 2004.

Present: LAURENCE, BROWN, & BERRY, JJ.

*Parent and Child,* Child support. *Evidence,* Earning capacity. *Practice, Criminal,* Assistance of counsel.

At the trial of a criminal complaint charging the defendant with failing to comply with a child support order, G. L. c. 273, § 1(4), the evidence demonstrated that the defendant's earning capacity was sufficient to meet the support order and that he wilfully failed to meet those obligations by manipulating his earnings in an attempt to create an inability to pay. [424-426]

There was no merit to a criminal defendant's argument that his counsel had been ineffective at trial in failing to request certain rulings of law, where any request for rulings of law would not have materially changed the verdict. [426-427]

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on January 4, 2001.

The case was heard by *James B. McElroy,* J.

*William W. Adams* for the defendant.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

BROWN, J. After a jury-waived trial in the District Court, the defendant was found guilty of one count of failing to comply with a support order, G. L. c. 273, § 1(4), from March 1, 1997, to March 26, 2000.[1,2] On appeal the defendant argues that the

---

[1]The pertinent portion of G. L. c. 273, § 1, as amended through St. 1995, c. 5, § 97, reads as follows: "A spouse or parent shall be guilty of a felony and shall be subject to the penalties set forth in section fifteen A if: . . . (4) wilfully and while having the financial ability or earning capacity to have complied, he fails to comply with an order or judgment for support . . . ."

[2]A second complaint charging nonsupport for a period in 2001 was dismissed by the judge at the request of the prosecutor.

evidence was insufficient to sustain the verdict and that his attorney was ineffective.

The defendant was married on April 21, 1990, to Diane Shane, who, by the time of trial, had changed her name to Diane Tracy. The defendant was then twenty-five years old. Their first son, Devin Howard, was born on September 21, 1990. The couple's second son, Dylan Howard, was born on March 19, 1992. During the marriage the defendant was primarily employed as a radiation therapist, earning at times as much as $1,500 per week. The couple separated in September, 1996, and the defendant moved to Stephentown, New York. The defendant had stopped working as a radiation therapist and went back to school through a program at Albany Medical Center.[3]

On December 16, 1996, a judgment of divorce nisi was entered in the Berkshire Division of the Probate and Family Court Department. The divorce judgment required the defendant to pay $11.55 per week to the Department of Revenue for the support of his two children. That amount was increased after a hearing held on August, 19, 1997, to $123 per week because the defendant was employed at C & S Wholesalers in Westfield, earning $400 per week. At the same time, an amount of $683.10 was set as the arrears owed by the defendant, based in part on his having failed to make any payments since at least the previous February. The defendant's former wife testified that the defendant told her while they were still in the court house, after the hearing had concluded, "that he would work at McDonald's before he would ever pay."

A wage assignment reflecting the increased amount was put into effect, but only one payment of $123 could be collected on or about September 18, 1997, before the defendant quit the job.[4]

---

[3]The defendant testified that he had allowed his radiation therapy license to lapse after he went back to school to become a physician's assistant. The defendant also testified that he would have to return to school and retake the "boards" in order to renew his radiation therapy license. No other evidence was offered to substantiate this claim. The defendant was ultimately asked to leave the program in Albany when the school discovered that he had forged his physical examination.

[4]Included in an exhibit are answers the defendant supplied to the interrogatories propounded by his wife in the divorce proceedings. Therein, he indicated that he left the job at C & S Wholesalers in September, 1997.

On about the same date, the defendant obtained a temporary reduction in the support order from $123 per week to $11.55 per week, but on October 24, 1997, the order of $123 per week was reinstated and remained at that level throughout the period at issue in the complaint.

The defendant made no further support payments in 1997, apart from the $123 that had been taken from his wages in September. Rather, the defendant undertook a series of moves from Massachusetts to West Virginia, then to Michigan and back to his parents' home in Maine; each move involved one or more temporary jobs.[5]

From the end of July, 1998, through January, 2000, the defendant made more regular payments, although they were still insufficient to meet his obligations under the support order. On March 24, 2000, an order on a complaint for civil contempt was issued by the Berkshire Probate and Family Court. The order included the period set forth in the criminal complaint and established that as of March 24, 2000, the support order totaled $16,422.95; of that amount the defendant had paid $8,311.97 and still owed about $6,400 for the period in question.[6]

1. *Sufficiency of the evidence.* General Laws c. 273, § 1(4), requires the Commonwealth to prove that (1) there was an order or judgment for support; (2) the defendant wilfully failed to comply with that order; and (3) while having the financial ability or earning capacity to have complied. On appeal the defendant focuses his argument on the second and third elements, having conceded at trial the existence of a valid support order and his failure to make all of the required payments under that order.

Although decisional law has not specifically defined wilfulness in relation to G. L. c. 273, § 1(4), the term has been

---

[5]In contravention of his obligation under the court order, the defendant failed to inform his former wife of his changes of address.

[6]The contempt order that was issued on March 24, 2000, and admitted in evidence at trial reflects an amount owed by the defendant that is higher than $6,400 because it includes a period of time that predates what is set forth in the complaint.

An employee from the Department of Revenue, Norman Wagner, testified for the Commonwealth and differentiated the total amount owed from the amount that had accrued during the period in question.

discussed in the decisional law in relation to a similar statute criminalizing tax evasion. In *Commonwealth* v. *Kingston*, 46 Mass. App. Ct. 444 (1999), a case on which both parties rely, the court construed wilful to mean the "voluntary, intentional violation of a known legal duty."[7] *Id.* at 445, quoting from *Cheek* v. *United States*, 498 U.S. 192, 201 (1991). To this definition, case law involving criminal contempt for nonsupport has added the requirement that nonpayment cannot alone suffice to establish wilfulness. See, e.g., *Furtado* v. *Furtado*, 380 Mass. 137, 150 (1980).

The language of G. L. c. 273, § 1(4), similarly suggests that wilfulness cannot be determined in isolation or based solely on the defendant's failure to pay, but must be viewed in conjunction with the defendant's financial ability or earning capacity to comply with the support order. Because these two requirements are stated in the disjunctive, if there is proof of the defendant's financial ability to pay, there need be no demonstration of earning capacity and vice versa. See, e.g., *Commonwealth* v. *Jones*, 362 Mass. 83, 87 (1972); *Commonwealth* v. *Cote*, 15 Mass. App. Ct. 229, 244 (1983).

Here, the evidence demonstrated that the defendant's earning capacity was sufficient to meet the support order. At the beginning of the three-year period covered by the complaint, the defendant was a thirty-three year old, well educated, white male. There was no evidence that suggested the defendant suffered from any mental health or physical impairments that prevented him from obtaining employment. To the contrary, the defendant's frequent, long distance moves and his ability to readily secure work at each location suggests the opposite, that he was and is a healthy young man, quite capable of working. Finally, the defendant's employment at C & S Wholesalers removes any doubt that the defendant was capable of working and further establishes that he had an earning capacity of at least $400 per week in 1997, the first year of the period at

---

[7]The defendant somewhat inartfully refers to the definition in *Kingston* as requiring the Commonwealth to prove that "the defendant failed to comply 'with the specific intent to violate the law.'"

issue.[8] See generally *O'Reilly's Case*, 265 Mass. 456, 458 (1929), quoting from *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 8 (1908) (judge, in absence of testimony, may determine earning capacity based on his "knowledge of practical affairs or applying his judicial sense").

That the defendant voluntarily left this position within weeks of telling his former wife that he did not intend to pay support and upon the first and only wage attachment that was levied upon his earnings does not, contrary to the defendant's claims, suggest his inability to work. Rather, his conduct demonstrates a clear intent to avoid his support obligations to his children. See *Bisienere* v. *Buccino*, 36 Mass. App. Ct. 749, 753-754 (1994) (defendant's attempt to avoid alimony payments by manipulating his earning potential rejected by court). Compare *Larson* v. *Larson*, 37 Mass. App. Ct. 106, 110 (1994) (husband's unanticipated decision to retire early, forgoing significant income, did not constitute grounds to reduce support awarded under divorce judgment based on higher income).

The evidence amply demonstrated that the defendant's earning capacity was sufficient to comply with the support order, and that he wilfully failed to meet those obligations by manipulating his earnings in an attempt to create an inability to pay.[9]

2. *Ineffective assistance of counsel.* The defendant argues that his attorney was ineffective for failing to (a) request rulings of law; (b) seek dismissal of the complaint for lack of specificity; (c) obtain a bill of particulars; and (d) renew his motion for a required finding at the conclusion of the trial. The first three claims all relate to the statutory language that was included in the complaint and permits a finding of guilt upon proof of possessing either the "financial ability" *or* the "earning capacity" to comply with the order.

According to the defendant, counsel's failure to obtain rul-

---

[8]Given the defendant's prior employment history as a radiation therapist, at wages significantly above this amount, this weekly salary suggests a minimum earning capacity.

[9]The trial judge opined, "I think the evidence supports a finding that you have engaged over the past several years in a pattern of avoidance and evasion of [your child support] obligation . . . ."

ings of law makes it unclear whether the judge relied on the "financial ability" or the "earning capacity" prong and whether the evidence is sufficient to sustain that prong. Here, the judge's final statement, that he viewed the defendant as having engaged in a pattern of behavior designed to avoid his support obligations, despite having the ability to fulfil those obligations, made clear that the judge relied on the "earning capacity" portion of the statute. See generally *Commonwealth* v. *Adkinson*, 442 Mass. 410, 421 (2004) (where judge sits as trier of fact, it is presumed that he applies correct legal principles). Any request for rulings of law would not have materially changed the verdict, the basis for which was made clear by the judge and supported by the evidence.

The remaining aspects of the defendant's claim of ineffective assistance fall well below the standard articulated in the case of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), and thus no extended discussion is warranted.

*Judgment affirmed.*