# United States Court of Appeals
## For the First Circuit

No. 19-1031

UNITED STATES OF AMERICA,

Appellee,

v.

ADARBAAD F. KARANI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

Katherine C. Essington for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Andrew E. Lelling, United States Attorney, was on brief, for
appellee.

January 4, 2021

**LIPEZ**, **Circuit Judge**.  After a six-day trial, a jury convicted Adarbaad F. Karani, a former officer of the Boston Police Department, on two counts of making false statements during the purchase of a firearm, in violation of 18 U.S.C. § 922(a)(6), and one count of making a false statement in a record required to be kept by federal law, in violation of 18 U.S.C. § 924(a)(1)(A). The district court sentenced Karani to concurrent three-month terms of imprisonment, followed by a one-year term of supervised release.

Karani appeals his conviction on all three counts, arguing that we must vacate the conviction because the district court's jury instructions contained several legal and factual errors.  In particular, Karani claims that the decision of the district court to define the terms "gift" and "actual purchaser," used in a document essential to the purchase of the firearms, invaded the province of the jury.  He also argues that the court provided inconsistent, mistaken, and confusing instructions on the first count of making false statements during the purchase of a firearm in violation of § 922(a)(6).[1]

After careful review of the record and the law, we affirm.

---

[1] This case does not implicate any Second Amendment concerns.

## A.   The Ilnicki Transfer

We recount the facts, most of which are undisputed, as the jury could have found them.  In November 2015, the Boston Police Department ("BPD") recovered and transferred to the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") a Glock .45 caliber pistol with serial number YVT194.  ATF agents traced the firearm's ownership to David Ilnicki, who had reported the gun stolen about a month earlier.  Ilnicki told police that the gun was a "gift" from a "friend."  ATF's investigation revealed that the original purchaser of the firearm ("the Ilnicki gun") was appellant Karani.

Karani met Ilnicki while working police details at nightclubs in Boston where Ilnicki worked as a security manager and promoter.  Ilnicki testified that he initially sought to build a rapport with Karani to ensure security ran smoothly at the clubs, but they eventually became friends.  In August 2015, Ilnicki asked Karani via text message whether Karani knew if any BPD officers were selling unwanted firearms at a discounted price.  Karani responded that he would "hook [Ilnicki] up."  The pair discussed the various firearms of interest to Ilnicki, who ultimately settled on a Glock, model 30S, .45 caliber pistol.

That model did not meet Massachusetts' consumer safety standards and, therefore, could be purchased from an FFL in

Massachusetts only by qualified law enforcement officers, which precluded Ilnicki from purchasing the gun on his own. See Mass. Gen. Laws ch. 140, § 123 (prohibiting the sale of certain categories of firearms in Massachusetts); 501 Mass. Code Regs. § 7.02 (identifying the categories of firearms that are prohibited); see also 18 U.S.C. § 926B (providing that, "[n]otwithstanding any other provision of the law of any State . . . a qualified law enforcement officer . . . may carry a concealed firearm that has been shipped or transported in interstate commerce," except machine guns, firearm silencers, or other destructive devices). As a police officer, however, Karani could purchase the pistol and was also eligible to receive a manufacturer discount.[2]  With the discount, Karani paid $530 to purchase the Ilnicki Gun from Precision Point Firearms, a federal firearms licensee ("FFL") located in Woburn, Massachusetts.

To complete the purchase of the gun, Karani filled out ATF Form 4473, a document that FFLs must use to gather the details that they are required by federal law to report about persons purchasing firearms. See 18 U.S.C. § 923(g); 27 C.F.R. § 478.124. That data includes the purchaser's name, address, date of birth,

---

[2] In particular, Karani was eligible for Glock, Inc.'s "Blue Label Program," which offers members of law enforcement, firefighters, paramedics, and military personnel a $75-$100 discount on certain Glock pistols. See GLOCK Blue Label Program, GLOCK, Inc., https://us.glock.com/buy/blue-label-program (last visited Nov. 17, 2020).

ethnicity, height, and weight. Form 4473 also assists FFLs in collecting the information needed for the criminal background checks required under federal law.

Form 4473 also contains a series of questions intended to assess whether an individual may lawfully purchase and possess a firearm. For example, Questions 11.c. and 11.k. ask whether the potential purchaser is a felon or illegally present in the United States, statuses that preclude the possession of a firearm. See 18 U.S.C. § 922(g)(1),(5)(A). Of relevance to this case, Question 11.a. asks whether an individual is "the actual transferee/buyer" of the firearm. Question 11.a. also offers the following admonition: "**Warning: You are not the actual buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual buyer, the dealer cannot transfer the firearm(s) to you.** *(See Instructions for Question 11.a.).*" The associated instructions state:

> **Question 11.a. Actual Transferee/Buyer:** For purposes of this form, you are the actual transferee/buyer if you are purchasing the firearm for yourself or otherwise acquiring the firearm for yourself *(e.g., redeeming the firearm from pawn/retrieving it from consignment, firearm raffle winner).* You are also the actual transferee/buyer if you are legitimately purchasing the firearm as a gift for a third party. ACTUAL TRANSFEREE/BUYER EXAMPLES: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. Mr. Jones is NOT THE ACTUAL TRANSFEREE/BUYER of the firearm and must answer "NO" to question 11.a. The

- 5 -

licensee may not transfer the firearm to Mr. Jones. However, if Mr. Brown goes to buy a firearm with his own money to give to Mr. Black as a present, Mr. Brown is the actual transferee/buyer of the firearm and should answer "YES" to question 11.a.

The answer to Question 11.a. must be "Yes" for the sale to proceed; that is, the individual filling out the form must attest that he is the actual transferee/buyer of the gun. As the instructions explain, an individual falls into that category if he purchases the gun either for himself or as a gift for a third party. The Form does not, however, ask an individual to identify which of those two scenarios applies.[3]

In September 2015, Karani checked "Yes" in response to Question 11.a., attesting that he was the "actual transferee/buyer" of the Ilnicki gun. He did not indicate to the FFL whether he was purchasing the firearm for himself or as a gift and the FFL did not ask.

In addition to Form 4473, Karani also signed an "Affidavit in Support of Handgun Purchase for Official Duty" ("the Ilnicki Affidavit" or "the Affidavit"). By signing the Affidavit, Karani swore, under penalty of perjury, that he was purchasing the

---

[3] If an FFL nonetheless becomes aware during a transaction that the individual is purchasing a firearm as a gift, the FFL might, as a matter of practice, keep the firearm in the store until the recipient picks it up, at which point the recipient himself will complete ATF Form 4473 and undergo a background check. There does not seem to be any law or regulation that explicitly requires this practice.

firearm to "directly or indirectly supply [himself] with a handgun for [his] official duties as a law enforcement official or member of the United States military."[4]

Either before or shortly after Karani purchased the gun, Ilnicki provided Karani confirmation of his firearms license and paid Karani $500 in cash.  Ilnicki testified that he intended to give Karani $530, but the ATM would allow him to take out only $500.  When Ilnicki said he would owe Karani $30, Karani responded that Ilnicki could make up the difference with a round of drinks.

When Karani completed the documents to transfer the gun to Ilnicki, he entered the incorrect serial number.[5]  That serial number -- XRF158 -- belonged to another Glock firearm that was

---

[4] The FFL testified at trial that the Affidavit was prepared by his attorney for the FFL's own "peace of mind" and to protect him from liability under state law by confirming Karani's status as a law enforcement officer.  In closing, however, defense counsel argued that the sole purpose of the Affidavit was to confirm Karani's eligibility for the Glock discount.  Although the impetus for the Affidavit is thus somewhat unclear, this uncertainty does not affect the issues presented in this case.  The Affidavit was withdrawn from the jury's consideration for the reasons explained infra in Section I.F.

[5] Mass. Gen. Laws ch. 140, §§ 128A and 128B require all gun sales, transfers, inheritances, or losses to be reported to the Massachusetts Department of Criminal Justice Information Services Firearms Records Bureau through the online Massachusetts Gun Transaction Portal.  See Massachusetts Gun Transaction Portal, https://mircs.chs.state.ma.us/fa10/action/home?app_context=home& app_action=presentHome (last visited Nov. 4, 2020).  The required information includes a detailed description of the transferred weapon (caliber, make, model, and serial number) and the name and address of both the seller/transferor and buyer/transferee.  Mass. Gen. Laws ch. 140, § 128B.

purchased by Karani less than a year earlier and was transferred to another individual, Joseph DePasquale, just two days after its purchase. The timing of that transfer aroused ATF's suspicion and led agents to investigate whether Karani had unlawfully purchased the gun on behalf of DePasquale.

## B. The DePasquale Transfer

Like Ilnicki, Karani knew DePasquale through working in the Boston nightlife industry. DePasquale's father owned various restaurants and nightclubs in Boston for which Karani regularly provided police detailing services. DePasquale testified that, after he told Karani that he was getting his gun license, Karani offered to help him purchase a firearm at a law enforcement discount. Based on DePasquale's preferences, Karani purchased a Glock, model 27, .40 caliber pistol ("the DePasquale gun") in November 2014, from FFL North Shore Firearms, LLC, in Middleton, Massachusetts. DePasquale was prohibited from purchasing that model Glock on his own because it could be purchased from an FFL in Massachusetts only by qualified law enforcement officers for the same reasons described above with respect to the Ilnicki gun. See Mass. Gen. Laws ch. 140, § 123; 501 Mass. Code Regs. § 7.02; see also 18 U.S.C. § 926B. Karani also purchased a holster for the DePasquale gun.

Karani completed and signed an ATF Form 4473 for the DePasquale gun identical to the one described above with respect

to the Ilnicki gun.  Karani similarly checked "Yes" to Question 11.a.  He also signed a document titled "Certification Letter," stating, not under penalty of perjury, that he was a law enforcement officer purchasing the firearm for "on or off duty use and . . . not . . . for resale."[6]

On November 19, 2014, Karani sent DePasquale a text message stating: "picked up your piece today.  gotta good deal on it. . . . came out to $500 w/tax.  should wait a few days before we do the transfer."  DePasquale agreed to pay Karani the "exact amount" and sent Karani a picture of his valid firearms license.  On November 21, Karani completed the paperwork to transfer ownership of the firearm to DePasquale.

A week later, Karani transferred physical possession of the gun to DePasquale and arranged for payment at a later date.

---

[6] At trial, a seventeen-year ATF veteran explained the function of the Letter somewhat inconsistently.  Compare Docket No. 106, at 136 (explaining that the Letter was prepared by the wholesaler/distributor and had the dual effect of confirming Karani was a law enforcement officer eligible to purchase a gun that was otherwise prohibited under Massachusetts law, and providing assurance to the manufacturer that Karani was eligible to receive the manufacturer's law enforcement discount), with Docket No. 106, at 141-42 (explaining that the Letter was not prepared for the manufacturer to confirm eligibility for the discount, but instead was a form that an FFL is required by Massachusetts law to keep in his records).  For reasons we will explain infra at note 14, however, the origin and purpose of the Certification Letter do not impact our analysis of the issues presented in this appeal.

DePasquale ultimately paid Karani $540, which was the total cost of the firearm and holster with Karani's law enforcement discount.

## C.    The Indictment

In April 2017, Karani was indicted on four counts of knowingly making a false statement in connection with purchasing a firearm.  Counts 1 and 2 alleged violations of 18 U.S.C. § 922(a)(6), which makes it unlawful for any individual "knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness" of a federal firearms sale.  Counts 3 and 4 alleged violations of 18 U.S.C. § 924(a)(1)(A), which provides that whoever "knowingly makes any false statement . . . with respect to the information required . . . to be kept in the records" of an FFL, "shall be fined[,] . . . imprisoned not more than five years, or both."

Counts 1 and 3 involved Karani's purchase of the DePasquale gun under the respective statutes.  Count 1 alleged that Karani made two false statements in violation of § 922(a)(6): (1) by claiming that he was the "actual transferee/buyer" of the DePasquale gun on the ATF Form 4473 that he completed at the time of purchase; and (2) by stating on the Certification Letter that he was purchasing the DePasquale gun for "official use and not for

resale."[7]  Count 3 alleged that Karani's statement on the ATF Form 4473 alone also violated § 924(a)(1)(A).

Counts 2 and 4 involved Karani's purchase of the Ilnicki gun under the respective statutes.  Count 2 alleged that Karani made two false statements in violation of § 922(a)(6): (1) by asserting that he was the "actual transferee/buyer" of the Ilnicki gun on the ATF Form 4473 that he completed at the time of purchase; and (2) by claiming on the Ilnicki Affidavit that he was "indirectly or directly" purchasing the gun for "official use." Count 4 alleged that Karani's statement on the ATF Form 4473 alone also violated § 924(a)(1)(A).

## D.  Karani's Defense at Trial

In his opening statement, Karani presented the essence of his defense: he "reasonably view[ed] the transfer of the two firearms at the police discount as being a gift to his friends" within the meaning of Form 4473.  On the third day of trial, however, the court informed counsel that it intended to charge the jury "that [Form 4473] pertains to a transfer of a gun or gift of a gun, not of a discount, and that it is not a defense to the case to say that Karani was giving a discount."  Defense counsel objected to no avail, arguing that the court was upending the

---

[7] The indictment incorrectly quotes the Certification Letter, which actually states that the gun was purchased for "on or off duty use and . . . not . . . for resale."  This discrepancy is discussed in further detail infra in Section II.E.

- 11 -

defense and that whether the "gift" in ATF Form 4473 refers to the gun itself or the transfer of a discount was a factual question for the jury to decide.

Testifying on the fourth day of trial, Karani conceded that he never intended to keep either the DePasquale or the Ilnicki gun. In both instances, he intended to use his law enforcement status to purchase a gun at a discounted price for a friend. Despite the court's warning that it would instruct the jury that the discount was not a gift, Karani maintained that he was truthful in his purchases because he reasonably believed that the discount constituted a gift. Recognizing that the court's previewed instruction foreclosed that defense, Karani also testified that the guns themselves were gifts because he transferred them without profit, was reimbursed only after he had purchased the guns with his own money, was not reimbursed fully for the Ilnicki gun, and was not compensated for his time or travel expenses.

## E.  Jury Instructions

The district court instructed the jury on the fifth day of trial. The court began by explaining that Karani was indicted on four counts of knowingly making a false statement under two different statutes, with respect to two different purchases. In defining a "gift" ("the gift instruction"), the court stated:

> Now, Form 4473 describes an actual buyer/transferee as one who buys a firearm for his own use or one who legitimately buys a firearm as a gift for [a]

third party. A "gift" means something that is voluntarily transferred to someone without payment, without compensation. In Form 4473, "gift" refers to the firearm, not the discount.

The court further explained that the jury had to decide Karani's intent ("the actual purchaser instruction"):

Was [Karani] buying the firearm for himself or as a gift for someone else or did he buy it for another with the intention to transfer the gun to that person with the expectation that the person would pay for it and did so, in which case he is not the actual purchaser.

The court pointed out that Karani was charged with making two false statements concerning each purchase in Counts 1 and 2: one each on ATF Form 4473 and a supporting document. The court informed the jury that, even though the indictment alleged that Karani made both false statements for each gun purchase, there is an indictment convention that "and" means "or" and "or" means "and."[8] Accordingly, the court explained, "the [g]overnment d[id] not have to prove . . . that the [d]efendant made a false statement in two documents."[9] The court further informed the jury that "all 12 of you have to be in agreement as to one or the other or both;

_____

[8] The parties cite no such generally applicable indictment convention. See infra at note 31.

[9] This instruction, when read in the context of the complete jury charge, sought to inform the jury that, even though Counts 1 and 2 each alleged two separate false statements (one each in ATF Form 4473 and a supporting document), the government needed to prove only one false statement on each count in order to sustain a conviction on that count.

that if all of you do not agree that the [d]efendant made a false statement in at least one of these documents and which one, you must find him not guilty."

Following the jury charge, defense counsel objected only to the court's gift instruction.

## F.   Questions from the Jury

On the first afternoon of deliberations, the jury submitted three questions to the court, two of which are relevant to this appeal: (1) "Under which counts is a false statement on a 4473 a violation?" and (2) "Under which counts would a false statement on the affidavits signed at the FFL(s) (not the 4473) be a violation?"[10]  After a lengthy discussion with counsel, the court responded: (1) "[O]n all counts, 1 through 4, a false statement on Form 4473 is a violation of law";[11] and (2) "Count 1 is the only count that references an affidavit on which the [d]efendant is accused of representing that the 'purchase was for official use and not for resale.'"[12]

---

[10]  The third question asked for a transcript of Karani's testimony, which the court informed the jury was not yet available.

[11]  As noted, there were two ATF Form 4473s at issue: one involving the DePasquale gun on Counts 1 and 3 and one involving the Ilnicki gun on Counts 2 and 4.

[12]  Although the court used the term "affidavit," it was referencing the Certification Letter in Count 1.  The implications of the court's misuse of the word affidavit are discussed infra in Section II.E.

- 14 -

This explanation modified an earlier instruction of the court that a conviction could be sustained on Count 2 for the Ilnicki gun based on either the ATF Form 4473 or the Ilnicki Affidavit.[13] The court's revised instruction left only the ATF Form 4473 as grounds for conviction on Count 2, but left Count 1 untouched. For the DePasquale gun, the subject of Count 1, either the ATF Form 4473 or the Certification Letter could sustain a conviction. Defense counsel objected to this modification, insisting that the court's logic on Count 2 applied equally to Count 1, and that a false statement on an ATF Form 4473 was necessary for a conviction on either count. Specifically, defense counsel argued that because the Certification Letter was not required for the sale to proceed under federal law, a false statement on the Certification Letter was not an independent basis for a conviction on Count 1.[14]

---

[13] After much back and forth with counsel, the court decided that the Affidavit cited in Count 2 was too "broad" to be submitted to the jury because, unlike the Certification Letter, it did not include a statement that Karani was not purchasing the gun for resale. This supplemental instruction triggered several additional questions from the jury relating to the Count 2 Affidavit. As we shall further explain at the end of this section, that back and forth affected the jury's ultimate task on each count.

[14] On appeal, Karani no longer argues that the Certification Letter could not support a conviction on Count 1, which charged a violation of 18 U.S.C. § 922(a)(6). He argues only that the court's original and supplemental instructions regarding the Certification Letter were incorrect and confused the jury. The rationale for this change of position seems clear. To prove a violation of § 922(a)(6), the government needed to prove that an

Approximately one hour later, the jury submitted two additional questions not relevant to this appeal.[15] Less than a half hour after the court answered those questions, the jury posed two additional questions, one of which is relevant here:[16]

> Count 2 on the indictment indicated that [Karani] signed an affidavit that the purchase was for official use. Per your first note, you said only Count 1 [] references the affidavit. The second count would fall to a unanimous vote if the affidavit is relevant. So, we just want to check on if that would be true.

After another lengthy conversation with counsel, the court concluded that it would not retract its previous instruction

---

oral or written statement was made knowingly, was false, and was material to the lawfulness of a federal firearms sale. 18 U.S.C. § 922(a)(6). Unlike its counterpart, § 924(a)(1)(A), there is no requirement in § 922(a)(6) that the statement be made in a record required by law to be kept by an FFL. Neither is there any requirement that the statement be made in a form required by law or even be one that an individual was required by state or federal law to make. Id. The manner or form of a knowingly false statement is irrelevant so long as the statement is material to the lawful sale of the firearm. Id. Assuming, then, that the statement in the Certification Letter was material to the lawfulness of the sale, a proposition which Karani does not challenge, it was actionable under § 922(a)(6).

[15] In the first question, the jury requested a copy of the indictment, which the court provided. In the second question, the jury again asked for a transcript of Karani's testimony and also requested a transcript of the testimony of one of the government's witnesses. The court informed the jury that the requested transcripts could not be prepared "within a reasonable time."

[16] In the additional question, the jury asked the court "[p]ursuant to [its] last answer, what [qualifies as] a 'reasonable time'" for the requested transcripts. The court provided the requested transcripts to the jury the following business day.

directing the jury to disregard the Ilnicki Affidavit in Count 2.

Yet, given the jury's continuing confusion about the focus of its

deliberations, the court deemed it appropriate to provide the jury

with the following supplemental verbal instruction:

> All of the Counts, 1, 2, 3 and 4, allege that the false statement was that the [d]efendant was the actual purchaser, and that was made on Form 4473. Now, for each count, it's the same allegation on each count and the same form for each count. Count 1 also alleges substantially the same false statement on an affidavit that says that he bought for official use and not for resale.

> For purposes of 4473, in all counts he is an actual purchaser if he buys for his own use or is buying to make a gift of the firearm to someone else. For purposes of the affidavit in Count 1, he is a buyer if he bought for official use and not for resale. Those are the facts that you need to examine the evidence, as to which you need to examine and as to which you make a determination. Did he buy for his own use or did he buy for official use or did he buy for resale. . . .

> So that is really what I can explain to you. I'm not sure I can give you a whole lot more explanation and now the question for you is does that explain enough for you to be able to determine your verdict?

The foreperson responded "No," and again asked about the

Ilnicki Affidavit and its relation to Count 2. The court

responded: "Don't worry about Count 2. The affidavit in Count 2

you can ignore." To clarify further the jury's task, the court

explained that the jury

> should first look at 4473 and see whether [Karani] falsely made a statement on that. If you find he did not, then in Count 1 go to the affidavit. And

- 17 -

if he did not with respect -- if you find that he did not make a false statement under the affidavit on Count 1 as well, then you may find -- must find him not guilty. On Counts 2, 3 and 4, if you find he did not make a false statement knowingly on the form, 4473, then you also must find him not guilty as to Counts 2, 3 and 4.

The jury submitted yet another question to the court on the morning of the sixth trial day:

Sorry for continuing to ask questions regarding the affidavit in Count 1, but assuming the jury is unable to reach a consensus in regards to whether the [d]efendant knowingly made a false statement on the 4473, but can [all capitals double underlined] reach a consensus that he lied on the affidavit knowingly, would the jury find the [d]efendant guilty on Count 1 or would it continue to be hung?

The court[17] conferred with counsel and provided the following verbal answer: "[Y]es, if the jury finds unanimously that the [d]efendant knowingly made a false statement in the affidavit, then the jury should return a guilty finding on Count 1." The court also gave the jury an Allen[18] charge in response to its suggestion that it was hung.

At this point, after the numerous exchanges between the court and the jury, this was the posture of the case: (1) a false

---

[17] On the sixth day of trial, Judge Leo T. Sorokin covered for Judge Rya W. Zobel, who was unavailable.

[18] An Allen charge is a "supplemental jury instruction given by the court to encourage a deadlocked jury, after prolonged deliberations, to reach a verdict." Allen Charge, Black's Law Dictionary (11th ed. 2019); see also Allen v. United States, 164 U.S. 492, 501-02 (1896).

statement that Karani was the actual buyer of the DePasquale gun on ATF Form 4473 was sufficient to sustain a conviction on Count 1 and necessary to sustain a conviction on Count 3; (2) a false statement that the DePasquale gun was for on or off duty use and not for resale on the Certification Letter was an independent basis for conviction on Count 1; (3) a false statement that Karani was the actual buyer of the Ilnicki gun on ATF Form 4473 was necessary for a conviction on both Counts 2 and 4; and (4) a false statement on the Ilnicki Affidavit charged in Count 2 was no longer a basis for conviction on Count 2.

Approximately one hour later, the jury reported by general verdict that it had found Karani guilty on Counts 1, 2, and 4, and not guilty on Count 3.[19]

## II.

Karani argues that his convictions must be vacated, and a new trial ordered, because of prejudicial errors in the jury instructions. First, he asserts that the court's instructions and

---

[19] The convictions on Counts 1, 2, and 4 have this internal logic. The jury must have determined that Karani's statement that he was the actual buyer of the Ilnicki gun on Form 4473 was false because that statement was the sole basis for a guilty verdict on Counts 2 and 4. The jury found no falsity in Karani's statement that he was the actual buyer of the DePasquale gun on Form 4473 because that statement was the sole basis for Count 3, on which Karani was acquitted. The jury's conviction on Count 1 must have been based on the Certification Letter alone because its acquittal on Count 3 meant that it necessarily found no falsity in the DePasquale Form 4473, the alternative basis for a conviction on Count 1.

supplemental instruction on the terms "gift" and "actual purchaser" were incorrect and effectively directed a verdict for the government.  Second, Karani avers that the court misrepresented the content and legal effect of the Certification Letter.  He contends that if either ground is insufficient on its own to warrant a new trial, the cumulative effect of the court's errors requires that outcome.

## A.    Standard of Review

When addressing a preserved claim of legal error in jury instructions, we review de novo.  See, e.g., United States v. Figueroa-Lugo, 793 F.3d 179, 190-91 (1st Cir. 2015).  This standard applies to Karani's challenge to the gift instruction.

Karani concedes, however, that he did not preserve his objection to the court's actual purchaser instruction or the court's treatment of the Certification Letter.  We therefore review those portions of the charge and the supplemental instructions for plain error.  United States v. Velázquez-Aponte, 940 F.3d 785, 800 (1st Cir. 2019).  To demonstrate plain error, Karani must show that (1) the district court erred, and that (2) the error was clear and obvious, (3) it affected his substantial rights, and (4) it "seriously impaired the fairness, integrity, or public reputation of judicial proceedings."  Id. at 793 (quoting United States v. Montañez-Quiñones, 911 F.3d 59, 63-64 (1st Cir. 2018)).

- 20 -

**B.    Legal Background**

Karani was found guilty on Counts 1 and 2 of making a false statement during the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6), which provides, in relevant part:

> It shall be unlawful for any person in connection with the acquisition . . . of any firearm . . . knowingly to make any false or fictitious oral or written statement . . . with respect to any fact material to the lawfulness of the sale or other disposition of such firearm . . . .

Karani does not contest the materiality of his statements on appeal, presumably because the Supreme Court has conclusively determined that statements regarding whether an individual is engaging in a straw purchase -- i.e., a sale in which an individual purchases a firearm on behalf of another while claiming the firearm is for himself -- are material to the lawfulness of a firearms purchase.  See Abramski v. United States, 573 U.S. 169, 188-89 (2014).

Relatedly, 18 U.S.C. § 924(a)(1)(A), the basis for Karani's conviction on Count 4, prohibits an individual from "knowingly mak[ing] any false statement or representation with respect to the information required by [Chapter 44 of Title 18] to be kept in the records of [an FFL]."  Although there is some overlap between these two provisions, § 922(a)(6) encompasses all materially false statements made regarding the legality of the firearm sale, whereas § 924(a)(1)(A) lacks a materiality

requirement and applies only to statements made in records an FFL is required to maintain.

The "twin goals" of these provisions, within the broader statutory scheme, are "to keep guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes." Abramski, 573 U.S. at 180. Exercising congressionally delegated authority, the Attorney General authorized ATF to develop Form 4473 as a means of implementing these goals. See id. at 172-73.

The Supreme Court has explained that the federal firearms laws reflect a congressional intent to regulate straw purchases regardless of whether the "true purchaser" -- i.e., one who sends an agent to the FFL to purchase a gun on his behalf -- was lawfully entitled to possess the gun. Id. at 186-87. The Court noted that Congress chose to enforce gun regulations by requiring a purchaser to transact directly with an FFL when that individual is purchasing a gun from the FFL. Id.

C. The Gift Instruction

ATF Form 4473 states that a person is an actual purchaser if he purchases a gun for his own personal use or as a gift. In its instructions to the jury, the district court defined a "gift," as that term is used in Form 4473, as "[a] firearm, not [a] discount," that is transferred voluntarily "without payment, without compensation." Karani contends that the court's

definition is inaccurate and, because the term is not defined in Form 4473 or the applicable statutes, the court erred in defining what constitutes a "gift" for the jury.

We need look no further than the plain and ordinary meaning of the language in Form 4473, however, to conclude that the court properly defined a gift in these circumstances. Cf. Textron Inc. v. Comm'r of Internal Revenue, 336 F.3d 26, 31 (1st Cir. 2003) ("[I]f the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written."). The instructions to Question 11.a. state that an individual is an actual purchaser if he buys a "firearm as a gift for a third party." That language makes clear that it is the firearm itself -- not a discount or any other associated benefit of the transfer -- that must be "given."

To discern when a firearm is transferred as a "gift," we look to the ordinary meaning of that term. Legal and non-legal dictionaries alike define a gift by using terminology comparable to that used by the district court -- a transfer without remuneration. See Gift, Black's Law Dictionary (11th ed. 2019) ("The voluntary transfer of property to another without compensation"); Gift, Merriam-Webster's Collegiate Dictionary (11th ed. 2014) ("[S]omething voluntarily transferred by one person to another without compensation"). The Supreme Court has described a gift in these circumstances using similar language in

dicta.  See Abramski, 573 U.S. at 186-88 (explaining that ATF sought to allow bona fide gifts and prohibit straw purchases where an individual purchases a gun on behalf of another with compensation or reimbursement); see also id. at 199 (Scalia, J., dissenting) (explaining that, under the government's view, a transfer lawfully qualifies as a gift "[s]o long as no money changes hands, and no agency relationship is formed").  Based on the foregoing, we conclude that the district court properly defined the term "gift" in Form 4473 as a firearm, not a discount, transferred without compensation.

Karani contends that he was nevertheless entitled to submit his own understanding of the term "gift" to the jury because his understanding of that term was inextricably intertwined with whether he (1) made a false statement on Form 4473 and (2) did so knowingly.  In making this argument, Karani relies first on United States v. DiRico, 78 F.3d 732 (1st Cir. 1996).

In DiRico, where materiality was an element of the offense, we reversed the district court's determination that the materiality of a statement on a tax return was a legal question for it, rather than the jury, to decide.  Id. at 736.  Although it was the duty of the court to "properly instruct the jury on the legal definition of materiality," the jury had to decide materiality based on the evidence proffered at trial.  Id.

Here, unlike in DiRico, the court did not remove an element of the offense from the jury's consideration. Indeed, the term "gift" is not an element of the false statement offenses. Instead, it is a term relevant to the determinations that the jury had to make on the elements of the offenses -- for Counts 1 and 2: knowledge, falsity, and materiality; for Counts 3 and 4: knowledge, falsity, and appearance in a record that an FFL was required to keep by law. The court had a responsibility to define the term "gift" because the jury's understanding of that term was essential to its determinations on the elements of the offenses.

Moreover, contrary to Karani's assertion, the court's definition of "gift" did not necessitate a finding that his statements were false. After the court informed the parties that it would instruct the jury that it must find that the firearm itself, not the discount, was a gift, Karani adjusted his defense. Although he still argued in closing that the discount was a gift, he also argued that the firearms themselves were gifts under the court's definition because he did not profit from their transfers, he expended time and resources for which he was not compensated, and he paid for the guns out-of-pocket before he was reimbursed. Thus, the court's definition of gift did not invade the duty of the jury to decide whether Karani's statements were false.

We find similarly unavailing Karani's argument, relying on Cheek v. United States, 498 U.S. 192 (1991), that his

- 25 -

understanding of the term "gift," even if it was wrong, was a mistake of law that was critical to the jury's determination of whether he knowingly made a false statement. In Cheek, the defendant was charged with willfully violating income tax laws. Id. at 194. Although the defendant conceded that he violated the law, he argued that his violation was not willful because he sincerely believed that income taxes were unconstitutional. Id. at 195-96. The district court instructed the jurors that an "objectively reasonable good-faith misunderstanding of the law would negate willfulness." Id. at 196-97. However, it also told them that the defendant's belief that he had no legal duty to pay taxes was not objectively reasonable. Id. The Supreme Court reversed, explaining that the sincerity of the defendant's belief as to whether he had a legal duty to pay taxes, even if unreasonable, was a jury question because it went to the heart of whether he had committed a "willful" violation of the tax code. Id. at 203.

Cheek is inapt precedent for Karani's knowledge-based claim of error. As the Supreme Court has explained, the "highly technical" tax code risks "ensnaring individuals engaged in apparently innocent conduct." Bryan v. United States, 524 U.S. 184, 194 (1998). To counteract that risk, "willful" mens rea in certain portions of the tax code requires specific intent to violate a known legal duty. Id. at 193-96. If the jury credits

- 26 -

a defendant's proffered ignorance or misunderstanding of the specific legal duty he is charged with violating, he cannot be held criminally liable. Cheek, 498 U.S. at 202. Cheek thus carves out a limited exception for certain tax violations to the traditional rule that a mistake of law does not excuse a violation of the law.[20] See id. at 203-04; see also Bryan, 524 U.S. at 194-96.

In Bryan v. United States, to demonstrate the limited applicability of Cheek, the Court considered specifically whether 18 U.S.C. § 924(a)(1)(D),[21] which imposes an increased penalty for "willful" violations of certain federal firearms laws, carried a Cheek-like mens rea requirement, such that mistake of the law was a valid defense. Bryan, 524 U.S. at 194-96. Despite Congress' use of the same term -- willful -- the Court held that Cheek was inapplicable because the federal firearms laws did not present the same danger of ensnaring apparently innocent conduct that motivated the decision in Cheek. Id. at 195. Hence, the Court

---

[20] That ignorance of the law is no excuse for violation of the law is "deeply rooted in the American legal system." Cheek, 498 U.S. at 199. It is premised on the notion that "the law is definite and knowable" and, for that reason, we presume, unless Congress provides otherwise, that every person knows the law. Id. (citing Oliver Wendell Holmes, Jr., The Common Law 47-48 (1881)).

[21] Pursuant to § 924(a)(1)(D), "whoever willfully violates any . . . . provision of [this chapter except as otherwise provided] shall be fined under this title, imprisoned not more than five years, or both."

held that "willful" in the federal firearms laws "d[id] not carve out an exception to the traditional rule that ignorance of the law is no excuse."  Id. at 196.

Drawing on Bryan, we conclude that, if Cheek does not apply to a willful violation of the federal firearms laws, it likewise does not apply to the lesser, knowing violation at issue here.  See id. at 193 (explaining that a willful state of mind requires an "evil-meaning mind," which is more than a knowing state of mind).  Indeed, we recognized as much in United States v. Meade, 175 F.3d 215 (1st Cir. 1999), although we considered a different subsection of the firearms laws.  There, we explained that "it simply does not appear plausible" that Congress intended a "knowing" violation of § 922(g), which criminalizes the possession of a firearm by prohibited persons, "to carry a mens rea requirement of actual knowledge of the law."  Meade, 175 F.3d at 226 n.5; see also Acosta v. Loc. Union 26, UNITE HERE, 895 F.3d 141, 145 & n.5 (1st Cir. 2018) (explaining that courts presume, absent a material variation in the surrounding text, that a word bears the same meaning throughout a statutory provision).

Accordingly, to prove a knowing violation of the federal firearms laws at issue here -- §§ 922(a)(6) and 924(a)(1)(A) -- the government only needed to prove that Karani "knowingly [made]

- 28 -

a[] false . . . statement."[22]  In other words, it needed to show that when Karani signed the relevant documents affirming that he was purchasing the gun either for himself or as a gift for a third party, he knew the facts contrary to those representations -- i.e., that he was purchasing a gun on behalf of another and would be reimbursed -- and, hence, he knew his statements were false.  To assist the jury in making that determination, the district court properly and accurately instructed the jury on the legal meaning of the term "gift," and, in doing so, did not direct a verdict on any element of the offense or otherwise invade the province of the jury.  We therefore detect no error in the district court's gift instruction.

## D.   Actual Purchaser Instruction

Karani argues for the first time on appeal that there were multiple errors in the district court's actual purchaser instruction, which asked the jury to consider whether:

> [Karani was] buying the firearm for himself or as a gift for someone else or did he buy it for another with the intention to transfer the gun to that person with the expectation that the person would pay for it and did so, in which case he is not the actual purchaser.

_____

[22] The other requirements of either provision are not at issue here because (1) again, Karani does not challenge materiality under § 922(a)(6), and (2) the false statements alleged to violate § 924(a)(1)(A) in Counts 3 and 4 were made in Form 4473s, which are "required by [Chapter 44 of Title 18] to be kept in the records of [an FFL]," see 18 U.S.C. § 923(g); 27 C.F.R. § 478.124.

As noted above, we review this challenge only for plain error. See Velázquez-Aponte, 940 F.3d at 800.

Karani initially contends that the actual purchaser instruction presupposed that a transfer of a firearm at a discount could never be considered a gift. As we have explained, the availability of a discount does not render a firearm purchase a "gift." Accordingly, the district court did not err by instructing the jury that a gun purchased by someone who intends to transfer the firearm to someone else, with reimbursement for the cost, is not a "gift" and, hence, the transferor is not the actual buyer.

Karani also objects to the actual purchaser instruction quoted above on the ground that the court directed the jury to find that Karani was not an actual purchaser because it used the facts of this case as an example, and stated that, under those facts, the defendant could not be considered an actual purchaser.

This claim of error also fails. Although it would be easy to mistake the example used in the court's instruction for the facts of this case -- an individual purchasing a gun for another with the expectation that the person would, and did, pay for the gun -- the instruction merely illustrated a quintessential straw purchase. That Karani admitted to facts that have a strong resemblance to a typical straw purchase does not render the court's instruction erroneous.

Indeed, the district court mirrored language routinely used by the Supreme Court and our sister circuits in describing a straw versus actual purchaser. See, e.g., Abramski, 573 U.S. at 171-72 (describing a straw purchaser as "a person who buys a gun on someone else's behalf while falsely claiming that it is for himself"); United States v. Blake, 394 F.3d 1089, 1090 (8th Cir. 2005) (describing a straw purchaser as one who "purchased [guns] from [FFLs] on behalf of others who provided the money for the guns"); United States v. Ortiz, 318 F.3d 1030, 1038 (11th Cir. 2003) (identifying a straw transaction as one where the defendant "at the time of completing Form 4473 had no intention of keeping the firearms or giving them as a gift").

Accordingly, we discern no error in the court's actual purchaser instruction.[23]

E.   The Certification Letter

Karani asserts that the district court committed several errors in instructing the jury on Count 1 concerning the substance and legal effect of the Certification Letter. Those errors can be divided into two categories: (1) claims that the court mischaracterized the Certification Letter, and (2) claims that the court improperly instructed the jury on the significance of the

---

[23] Because we conclude that the district court's gift and actual purchaser instructions were not erroneous, we need not consider appellant's argument that the alleged errors were structural.

- 31 -

Certification Letter to Count 1.[24]  Karani concedes that these claims were not preserved and, therefore, we review for plain error.

## 1. Mischaracterization of the Certification Letter

Karani correctly points out that the district court inaccurately referred to the Certification Letter as an affidavit -- mirroring the language of the indictment -- and also misquoted the Certification Letter's language on several occasions. He contends that these instructional errors resulted in an improper variance between the charges against him and the proof at trial.

To prevail on a claim of improper variance, an appellant must "show a material factual difference between the crime charged in the indictment and the crime proved at trial." United States v. Rodríguez-Milián, 820 F.3d 26, 33 (1st Cir. 2016). He must also demonstrate that the variance resulted in prejudice. Id. None of Karani's contentions concerning the Certification Letter satisfies these requirements.

First, Karani argues that the court's instructions and supplemental instructions were improper because the Certification Letter was not signed under penalty of perjury and was, therefore, not an affidavit. Karani is correct; the Letter was not an

---

[24] Again, we note that Karani does not argue on appeal that the Certification Letter itself was a legally insufficient basis for his conviction on Count 1. See supra note 14.

affidavit.  Indeed, the government concedes as much, even though Count 1 of the indictment classifies the Certification Letter as an affidavit and both parties used that term to describe the Certification Letter at trial.  The Ilnicki Affidavit, which was signed under penalty of perjury and, as previously discussed, ultimately withdrawn from the jury's consideration on Count 2, was apparently the source of this confusion.

Nevertheless, Karani fails to explain how the court's mischaracterization of the Certification Letter as an affidavit resulted in a material factual difference between the crime charged and the crime proven at trial, or prejudiced him in any way.  As we have already explained, to prove a violation of § 922(a)(6) on Count 1, the government had to prove only that Karani knowingly made a false statement that was material to the legality of the federal firearms purchase.[25]  The statute is not concerned with the form of the statement so long as it is material, and Karani does not challenge materiality.[26]  See § 922(a)(6).  Whether the Certification Letter was an affidavit is simply not relevant to whether a statement made within the document is a violation of

---

[25] See supra note 14 and Section II.B.

[26] See supra note 14 and Section II.B.  The allegedly false statement in the Certification Letter -- that the DePasquale gun was for "on or off duty use and . . . not . . . for resale" -- was material to the lawfulness of the sale because it concealed that Karani was engaging in a straw purchase.  See Abramski, 573 U.S. at 188-89.

§ 922(a)(6). Accordingly, the court's errors did not cause a prejudicial variance.

Second, Karani claims that the court instructed the jury that he declared on the Certification Letter that he purchased the DePasquale gun "for official use and not for resale," when, in fact, the Letter states that he purchased the firearm for "on or off duty use and . . . not . . . for resale."[27] Karani contends that the jury could have found that he purchased the gun for his own off-duty use -- meaning that his statement on the Certification Letter would be true -- but convicted him based on the court's incorrect instruction that the Certification Letter stated that the gun was only for official use. Karani further asserts that the jury must have relied on the Certification Letter in finding him guilty on Count 1.

For reasons we have already explained, we agree with Karani's contention that the jury likely convicted him on Count 1 based solely on his statements in the Certification Letter.[28] Nevertheless, Karani fails to demonstrate the requisite prejudice

---

[27] The court's instruction quotes the language in Count 1 of the indictment, which states that Karani "signed an affidavit that the purchase was for official use and not for resale." It is the Affidavit in Count 2, however, not the Certification Letter in Count 1, that states that Karani was purchasing the firearm to "directly or indirectly supply [himself] with a handgun for [his] official duties as a law enforcement official."

[28] See supra note 19.

resulting from the court's misstatement of the Letter's specific language.  The jury was given the Certification Letter and was therefore able to review the language itself.  Moreover, the distinction between a purchase for his own official or off-duty use is inconsequential in the circumstances of this case.  The question before the jury was whether Karani purchased the firearm for his own use (official or otherwise) or for resale.  By insisting that he purchased the guns as gifts for his friends, he conceded that he did not purchase the guns for his own use.  Hence, the court's imperfect use of language had no impact on the trial and is not reversible plain error.

## 2. Certification Letter's Significance to Count 1

Karani argues that, mistaken description aside, the instructions related to the Certification Letter were substantively problematic in multiple respects.  He contends that the court (1) confused the jury by giving inconsistent instructions regarding whether the government was required to prove a false statement in both the Certification Letter and ATF Form 4473, as alleged in Count 1 of the indictment; (2) failed to address the duplicity in the indictment; and (3) overlooked the government's waiver of reliance on the Certification Letter as a basis for conviction on Count 1.  We address each argument in turn.

**a. Inconsistent instructions.**  Karani is correct that the court provided conflicting instructions concerning the

significance of the Certification Letter to the Count 1 charge. In some parts of its instructions, the court told the jury that a false statement in either the Certification Letter <u>or</u> Form 4473 could support a conviction on Count 1, and at other times it referenced only the statement in the Form 4473.[29] At the end, however, when the jurors asked for clarification during their deliberations, the court instructed them, correctly, that either statement could form the basis for a conviction on Count 1.[30] We presume jurors follow a district court's curative instruction. See e.g., <u>United States</u> v. <u>Sepulveda</u>, 15 F.3d 1161, 1185 (1st Cir. 1993).

**b. Duplicitous indictment.** Count 1 of the indictment states that Karani "represented on ATF Form 4473 that he was the actual transferee/buyer of the firearm <u>and</u> signed an affidavit

---

[29] For example, the court explained to the jury that the "indictment charges that the Defendant represented on 4473 that he was the actual purchaser of the firearm, and at the end of Counts 1 and 2 signed an affidavit that the purchase was for official use and not for resale." Docket No. 109, at 66. In another instance, the court stated that "[a] false statement is one that gives information that is not true or correct. Here the Defendant's answer to Question 11A on this Form 4473, that he was the actual purchaser of the firearm, that's the alleged false statement**."** Docket No. 109, at 65. In yet another instance, the court explained to the jury that Counts 1 and 2 alleged that Karani made a false statement by representing on "ATF Form 4473 as to each sale that he was the actual buyer for his own official use and was not buying for resale when he actually did buy to sell to someone else." Docket No. 109, at 64.

[30] See supra Section I.F. discussing the posture of the case following the court's several supplemental instructions.

that the purchase was for official use and not for resale." (Emphasis added.) Karani claims that the indictment's use of "and" required the government to prove a false statement in both the Form 4473 and the Certification Letter and, for that reason, the district court improperly instructed the jury that Karani could be found guilty on Count 1 based on either one of the two documents.

Although this claim highlights a flaw in the indictment, Karani's assertion of error in the court's instructions is unavailing. Because the indictment charges two distinct and complete violations of the same statute in a single count joined by the conjunctive "and," it is duplicitous. See United States v. Newell, 658 F.3d 1, 22 (1st Cir. 2011) ("[T]his indictment [i]s duplicitous in consolidating multiple complete offenses under single counts."). The remedy for a duplicitous indictment is a specific unanimity instruction to ensure that the jury understands that its verdict must be unanimous as to which instance of the alleged statutory violation resulted in a crime. See id. at 28 ("[T]he failure to provide a specific unanimity instruction [for the duplicitous charges] was error."). The district court provided such an instruction:

> It is enough if [the government] proves that [d]efendant made a false statement on either Form 4473 or the affidavit or on both documents, but all 12 of you have to be in agreement as to one or the other or both; that if all of you do not agree that the [d]efendant made a false statement in at least

> one of these documents and which one, you must find
> him not guilty.

No more was required.[31]

**c. Government waiver.** Finally, to the extent that Karani argues that the court's instructions failed to account for the government's abandonment of the Certification Letter as a basis for conviction on Count 1, his argument fails. Although the government did not use the phrase "Certification Letter" in its closing argument, the government referred generally to the substance of the Certification Letter and referenced the Letter itself consistently throughout trial -- in its opening statement, in direct examination of the various witnesses, and in cross-examination of Karani. Accordingly, the government did not abandon reliance on the Certification Letter, and Karani's argument that the court committed plain error in failing to so instruct the jury fails.

Affirmed.

---

[31] Any error resulting from the court's pronouncement that there is a general indictment convention that, without limitation, "'and' means 'or' and 'or' also means 'and,'" was harmless because the court properly addressed the duplicitous indictment by instructing the jury in the disjunctive and providing a unanimity instruction. See Newell, 658 F.3d at 28.